IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| MARIA ELVA HERNANDEZ-TORRES, EVAR LUNA, JORGE LUIS RIOS-RAMIREZ and all others similarly situated,<br><br>     Plaintiffs,<br><br><br>v.<br><br><br>SOUTHERN VALLEY FRUIT & VEGETABLE, INC.; HAMILTON GROWERS, INC.; KENT HAMILTON; HAMILTON FARMS MEX, L.P.; HAMILTON PRODUCE, L.P.; KENDA PROPERTIES, L.P.; WK HOLDINGS, LLC; WK MEX PROPERTIES, L.P.; and WKW, LLC,<br><br><br>     Defendants. | CIVIL ACT. NO.:<br><br>RULE 23 CLASS |

**COMPLAINT**

**I. PRELIMINARY STATEMENT**

1.        Plaintiffs are agricultural workers employed by Defendants in 2013, 2014 and

2015 to work at Defendants' operations in and around Colquitt and Cook Counties, Georgia.

Plaintiffs file this action on behalf of themselves and other similarly-situated workers to secure

and vindicate their rights under the Fair Labor Standards Act ("FLSA"), under the Migrant and

Seasonal Agricultural Worker Protection Act ("AWPA"), and under Georgia contract law.

2.        Defendants violated the FLSA by failing to pay each Plaintiff, Opt-In Plaintiff

and other similarly-situated worker at least the required hourly wage for every compensable hour

of labor performed in a workweek, including by failing to reimburse their pre-employment expenses as required by law. Defendants further violated the FLSA by failing to pay each Plaintiff, Opt-In Plaintiff, and other similarly situated worker employed in Defendants' packing shed operations overtime wages for hours worked in excess of forty hours per workweek. Plaintiffs allege that Defendants' failure to reimburse expenses and underpayment of workers was done knowingly and willfully.

3.          Defendants breached Plaintiffs' employment contracts by failing to pay the contractually promised wages, including those required by the Fair Labor Standards Act, for all hours worked.

4.          Plaintiffs and Opt-In Plaintiffs seek their unpaid wages, liquidated damages, actual, incidental, consequential, and compensatory damages, reasonable attorneys' fees and costs, and pre and postjudgment interest.

## II. JURISDICTION AND VENUE

5.          This Court has jurisdiction of this action pursuant to:

       a.          28 U.S.C. § 1331 (Federal Question);

       b.          29 U.S.C. § 1337 (Interstate Commerce);

       c.          29 U.S.C. § 216(b) (FLSA);

       d.          29 U.S.C. § 1854 (a) (AWPA); and

       e.          28 U.S.C. § 1367 (Supplemental).

6.          This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

7.        Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and M.D. Ga. Local Rule 3.4 because a substantial part of the claims arose in the Middle District of Georgia and because the Defendants reside there.

### III. PARTIES

8.        Plaintiff Maria Elva Hernandez Torres, Jorge Luis Rios Ramirez, and Evar Luna worked for Defendants in the 2013, 2014 and 2015 seasons.

9.        At all times relevant to this complaint, Plaintiffs Hernandez-Torres and Rios-Ramirez and others similarly situated were H-2A agricultural guest workers admitted into the United States to work under the auspices of the H2A program, 8 U.S.C. § 1188 and 20 C.F.R. §§ 655.0-655.185 or were employed alongside H-2A workers under the terms of an H-2A job order, pursuant to 20 C.F.R. § 655.122(a).

10.        Plaintiffs' FLSA consent forms are attached as Exhibit A to this complaint.

11.        At all times relevant to this action, Defendants Hamilton Growers, Inc. ("Hamilton Growers"), Southern Valley Fruit & Vegetable, Inc. ("Southern Valley"), WK Holdings, LLC ("WK Holdings"), Hamilton Farms Mex, L.P. ("Hamilton Farms Mex"), Hamilton Produce, L.P. ("Hamilton Produce"), Kenda Properties, L.P. ("Kenda Properties"), WK Mex Properties, L.P. ("WK Mex"), and WKW, LLC ("WKW"), collectively the "Corporate Defendants" were and are Georgia corporations, limited partnerships, or limited liability companies that maintain a principal place of business at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771-5036.

12.        Defendant Kent Hamilton is the Chief Executive Officer of Defendants Hamilton Growers and Southern Valley and is a member-manager of the remaining Defendants and may be served with process at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771-5036.

13.        Defendant Kent Hamilton is the day-to-day manager of all the Corporate

Defendants.

14.        Defendant Kent Hamilton exercises management, ownership, and financial

control over all of the Corporate Defendants.

15.        Defendant Kent Hamilton directs labor relations at the Corporate Defendants and

has the power to hire, fire, and alter the terms and conditions of employment for all employees of

all of the entities.

16.        Plaintiffs and Opt-in Plaintiffs were dependent for their wages as a matter of

economic reality on Defendant Kent Hamilton and the Corporate Defendants.

17.        Defendant Hamilton Growers may be served with process through its chief

executive officer, Kent Hamilton, at 2775 Ellenton-Norman Park Road, Norman Park, Georgia

31771.

18.        Defendant Southern Valley may be served with process through its registered

agent, Kent Hamilton, at 4160 Cool Springs Road, Norman Park, Georgia 31771.

19.        Defendants Hamilton Farms Mex, Hamilton Produce, Kenda Properties, WK

Holdings, WK Mex, and WKW, LLC may be served with process through their registered agent,

Kent Hamilton, at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

20.        The four Limited Partnership Defendants, Hamilton Farms Mex, Hamilton

Produce, Kenda Properties, and WK Mex ("Limited Partnership Defendants"), are comprised of

General Partner Defendant WK Holdings, and Limited Partners Wanda Hamilton-Tyler and

Defendant Kent Hamilton through their respective trusts.

21.        The two Limited Liability Corporation Defendants, WK Holdings and WKW,

("Limited Liability Defendants") are owned by Wanda Hamilton-Tyler Trust and Defendant

Kent Hamilton Trust.

22.         Defendant Hamilton Growers, the Limited Partnership Defendants, and Defendant WKW solely provide services for Defendant Southern Valley.

23.         Defendant WK Holdings, LLC serves as the General Partner of the Limited Partnership Defendants. WK Holdings has no revenue and conducts no business.

24.         In its capacity as General Partner, Defendant WK Holdings, operated and controlled by Wanda Hamilton-Tyler and Defendant Kent Hamilton, has full and complete power to conduct the business of Defendants Hamilton Farms Mex, Hamilton Produce, Kenda Properties, and WK Mex Properties and is responsible for management, employee relations, and bookkeeping.

25.         Defendants Hamilton Growers and Southern Valley share the same corporate officers and the same shareholders, Wanda Hamilton-Tyler and Kent Hamilton, and operate out of the same building.

26.         The Limited Partnership Defendants and the Limited Liability Defendants operate out of the same building as Defendants Hamilton Growers and Southern Valley.

27.         Defendant Hamilton Farms Mex leases farming equipment to Defendant Southern Valley for the cultivation of produce.

28.         Defendant Hamilton Produce leases farm equipment and refrigerated containers to Defendants Hamilton Growers and Southern Valley for the cultivation and storage of produce.

29.         Defendant Hamilton Produce does not invoice Defendants Hamilton Growers or Southern Valley for the leased equipment and containers and is merely paid as obligations arise or come due. Defendant Hamilton Produce solely provides equipment and containers to Defendants Hamilton Growers and Southern Valley.

30.         Defendant Kenda Properties leases all of its property to Defendants Southern Valley and Hamilton Growers to use for cultivating produce. The lease agreements were executed by Kent Hamilton and Wanda Hamilton-Tyler on behalf of both the lessors and the lessees.

31.         The majority of Defendant Kenda Properties' income is from land rent.

32.         Defendant Kenda Properties only rents property to Defendants Southern Valley and Hamilton Growers.

33.         Defendant WK Mex sells future produce paid for in advance exclusively to Defendant Southern Valley.

34.         The management of Southern Valley directs WK Mex to operate in synch and seamlessly with Southern Valley.

35.         Defendant WKW provides transportation services to Defendant Southern Valley.

36.         Upon information and belief, Defendant WKW derives substantially all of its income from transportation services provided to Defendant Southern Valley.

37.         The transportation services provided by WKW form an integral part of the business of Defendant Southern Valley.

38.         The bookkeeping for Defendant Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants is performed by employees of Defendant Southern Valley.

39.         Any work performed for the Limited Partnership Defendants and the Limited Liability Defendants is performed by employees provided by Defendants Southern Valley or Hamilton Growers, and managed by Defendant Kent Hamilton.

40.         Defendant WK Holdings controls the property of the Limited Partnership

Defendants and Defendant WKW and is authorized to sign loans on their behalf.

41.     Defendant WK Holdings and the Limited Partnership Defendants pledged all of their assets for a loan to Defendant Southern Valley. Defendant WK Holdings and the Limited Partnership Defendants have represented that the loan to Southern Valley would provide them with substantial economic benefits.

42.     The Corporate Defendants form part of the same enterprise and are economically dependent on one another for their ongoing business as Defendants Hamilton Growers and WK Mex supply the crops that Defendant Southern Valley markets and ships, Defendants Kenda Properties, Hamilton Farms Mex, and Hamilton Produce rent land and equipment to Defendants Hamilton Growers and Southern Valley, WKW provides transportation services to Defendant Southern Valley, and Defendant Southern Valley in turn supplies the funds for wages and expenses of Defendants Hamilton Growers, WKW, and the Limited Partnership Defendants. Defendant WK Holdings serves as a general partner for the Limited Partners in this scheme.

43.     Defendant Southern Valley owns the corporate headquarters where Defendants Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants are also based.

44.     Defendants Hamilton Growers and Southern Valley compensate the corporate officers of the Limited Partnership Defendants and the Limited Liability Defendants.

45.     Employees of Defendant Southern Valley maintain the corporate registrations and paperwork for Defendants Hamilton Produce, Kenda Properties, WKW, WK Holdings, Hamilton Farms Mex, and WK Mex.

46.     The Corporate Defendants act together to obtain financing and transact business.

47.     In all years relevant to this action, the Corporate Defendants collectively had

annual gross sales in excess of five hundred thousand dollars ($500,000).

48.        At least three of the Corporate Defendants, Hamilton Growers, WKW, and Southern Valley have jointly insured themselves against employment practices in a policy that extends to those other companies considered subsidiaries or joint ventures.

49.        The Corporate Defendants report their business results on consolidated financial statements, reporting the business results all together and do not prepare individual financial statements for reporting outside the companies.

50.        Defendants Hamilton Growers and WK Holdings effectively have no assets and Defendants Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants are dependent for their continued existence on Defendants Kent Hamilton and Southern Valley.

51.        Defendants Hamilton Growers and WK Mex coordinate all of their activities with Defendant Southern Valley, and Defendant Southern Valley directs when they are to harvest crops, which fields are to be harvested, and how much is to be harvested.

52.        The Corporate Defendants rely on each other to grow, pack and sell fruit and vegetable commodities.

53.        The Corporate Defendants process all shipments of produce to any one of the entities using the same "Receiving Record" form.

54.        The Corporate Defendants share common control and ownership, the same geographic location, and are interdependent on one another for their activities, and constitute one economic enterprise.

55.        Defendants are employers of Plaintiffs and other similarly situated workers employed under the terms of the 2013, 2014 and 2015 job orders as defined by the H-2A

regulations, 20 C.F.R. § 655.103(b), because they had a place of business in the U.S. and a means by which they could be contacted for employment, had an employer relationship with the Plaintiffs and other similarly-situated workers, and had a valid Federal Employer Identification Number.

56.        Kent Hamilton, as a principal and agent for all of the Corporate Defendants, signed the job orders on his own behalf and on behalf of the Corporate Defendants.

57.        Defendant Hamilton and the Corporate Defendants were employers under the Fair Labor Standards Act and the Agricultural Worker Protection Act because Plaintiffs and other similarly situated were dependent on Defendants as a matter of economic reality as detailed in the preceding paragraphs.

58.        At all times relevant to this action, Defendants Kent Hamilton and the Corporate Defendants were engaged in the harvesting and production of vegetables in Georgia for sale in interstate commerce and as such were an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

## IV. THE H-2A PROGRAM

59.        The H-2A program was created by 8 U.S.C. § 1188 and is implemented pursuant to the regulations found at 20 C.F.R. §§ 655.0-655.185. An agricultural employer in the United States may import H-2A workers if the United States Department of Labor ("U.S. DOL") certifies that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1).

60.        Employers must file a temporary labor certification application with the U.S. DOL's Employment and Training Administration. 20 C.F.R. § 655.130 (2010). The application

has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. § 655.122 (2010). The job order contains the terms to be offered to both foreign H-2A workers and domestic workers throughout the United States. *See* 20 C.F.R. § 655.121(a)(2).

61.        The terms and conditions of the job orders, together with the requirements of 20 C.F.R. part 655, constituted employment contracts for Plaintiffs and others similarly situated. 20 C.F.R. § 655.103(b) (definition of "work contract").

62.        The H-2A employment contracts at issue here incorporate a regulatory definition of employer found at 20 C.F.R. § 655.103(b) and the contracts contained a promise to "comply with applicable Federal, State and local law and regulations" including the Fair Labor Standards Act. *See* 20 C.F.R. § 655.135(e).

63.        In each year relevant to this action, Defendant Hamilton Growers submitted job orders to the U.S. DOL.

64.        The 2013, 2014, and 2015 job orders' "Employer's Certification" sections were signed by Defendant Kent Hamilton.

65.        In the employment contracts, Defendants promised that each worker would earn at least the AEWR [Adverse Effect Wage Rate], the prevailing hourly or piece rate wage, or the federal or state minimum wage, whichever is higher, for all hours worked in the payroll period.

66.        Plaintiffs' employment contracts promised to pay the applicable AEWR, which was $9.78 in 2013, and $10.00 in 2014 and 2015.

67.        In promising to pay the federally mandated AEWR, Defendants also promised to pay that wage free and clear without deduction of items for the employer's benefit or without reducing an employee's wages by shifting costs to their employees.

68.        In the employment contracts Defendants also promised that workers would be

paid their subsistence expense for travel from the place where the worker came and return travel

back to that place each year as required by 20 C.F.R. § 655.122(h).

69.         The minimum daily subsistence amount was published in the Federal Register and

as incorporated into Plaintiffs' and other similarly situated workers' contracts.


## V.  STATEMENT OF FACTS

70.         In each year relevant to this Complaint, Defendants imported H-2A workers under

job order contracts to plant, harvest, and pack produce.

71.         Defendant Hamilton Growers filed a job order in 2013, GA 8074274, proposing

to employ 76 agricultural workers from March 16, 2013, through December 31, 2013.

72.         Defendant Hamilton Growers filed a second job order in 2013, GA 8076591,

proposing to employ 200 agricultural workers from April 1, 2013, through December 31, 2013.

73.         Defendant Hamilton Growers filed a third job order in 2013, GA 8082253,

proposing to employ 329 agricultural workers from May 1, 2013, through December 31, 2013.

74.         Plaintiffs were employed under the terms of one of the 2013 job orders.

75.         Defendant Hamilton Growers filed five job orders in 2014:

    a.     A job order with employment dates of March 1, 2014 through December 31, 2014

        for twenty-nine workers under the job title "Farm Workers";

    b.     A job order with employment dates of April 1, 2014 through December 31, 2014

        for two hundred twenty-four workers under the job title "Farm Workers";

    c.     A job order with employment dates of May 6, 2014 through December 31, 2014

        for two hundred and fifteen workers under the job title "Farm Workers";

    d.     A job order with employment dates of April 22, 2014 through July 15, 2014 for seventy-nine workers under the job title "Farm Workers";

    e.     And a job order with employment dates of September 2, 2014 through December 5, 2014 for eighty-three workers with the job title "Farm Workers."

76.     Plaintiffs were employed under the terms of the 2014 job orders.

77.     Defendant Hamilton Growers filed four 2015 job orders:

    a.     A job order with employment dates of March 2, 2015 through December 31, 2015 for one-hundred twenty-nine workers under the job title "Farm Workers";

    b.     A job order with employment dates of March 1, 2015 through December 31, 2015 for eighty-three workers under the job title "Farm Workers";

    c.     A job order with employment dates of April 1, 2015 through December 31, 2015 for one hundred workers under the job title "Farm Workers";

    d.     A job order with employment dates of May 1, 2015 through December 31, 2015 for three hundred sixty-nine workers under the job title "Farm Workers";

78.     Plaintiffs were employed under the terms of the 2015 job orders.

<u>Recruitment, Hiring, and Expenses of Plaintiffs</u>

79.     Defendants recruited the Plaintiffs and other similarly-situated workers in Mexico through a network of local recruiters and through Defendants' U.S. based agents.

80.     Defendants through these recruiters and agents made employment offers to plant, harvest, and pack produce in Georgia.

81.     The recruiters were directed by Defendants' U.S. based supervisors, Fermin Palomares, Brenda Palomares, and their family members.

82.       Upon information and belief, Defendants did not compensate the recruiters for their recruiting services.

83.       Plaintiffs and other similarly-situated workers incurred various immigration and travel-related expenses in order to come to work for Defendants' operations in Georgia.

84.       Plaintiffs and other similarly-situated workers paid visa and processing fees in excess of $150 per season in each season that they obtained an H-2A visa for work in Defendants' operations.

85.       In order to comply with the Defendants' hiring processes, Plaintiffs and other similarly-situated workers traveled, at their own expense, from their homes to the U.S. Consulate in Monterrey, Nuevo Leon, Mexico, for the consular interview necessary to obtain an H-2A visa.

86.       Plaintiffs and other similarly-situated workers incurred expenses for lodging in Monterrey while they completed a visa application form, attended a consular interview, and waited for their visa applications to be processed and for their visas to be issued.

87.       Following the issuance of the H-2A visas, Plaintiffs and other similarly-situated workers boarded a bus and paid their own travel expenses from Monterrey, Mexico, or Nuevo Laredo, Mexico, to Defendants' operations in Georgia, which exceeded $150.

88.       For each year in which they obtained an H-2A visa, Plaintiffs and others similarly situated each paid a $6 fee for the issuance of the Customs and Border Patrol Form I-94 required to enter the U.S.

89.       Plaintiffs and others similarly situated were required to pay their own lodging and subsistence expenses during their journey from their homes in Mexico to Defendants' operations in Georgia.

90.         The expenditures set out in paragraphs 83 through 89 were primarily for the benefit of the Defendants within the meaning of 29 C.F.R. §§ 531.32(c) and 778.217.

91.         The expenditures described above were made before receipt of Plaintiffs' first paychecks in each contract period in which they worked.

92.         Defendants failed to reimburse Plaintiffs and other similarly-situated workers during the first workweek for the costs described above, resulting in these workers' first week wages falling well below the FLSA and AEWR minimum wage.

93.         Defendants did not reimburse Plaintiffs and other similarly-situated workers at the 50 percent point of these workers' work period for all inbound transportation to Georgia and subsistence expenses not previously reimbursed, as was required by their employment contracts.

94.         Plaintiffs and other similarly-situated workers were paid for many work activities on a piece-rate basis, such that they were paid according to the amount of crops they harvested or packed.

<u>Packing Shed Work</u>

95.         Upon information and belief, during the 2013, 2014 and 2015 seasons, Defendants purchased significant quantities of produce from other producers ("outside produce").  This outside produce was re-packed in Defendants' packing shed for distribution.

96.         Plaintiffs Hernandez-Torres, Rios-Ramirez, and Luna, and others similarly situated worked upon outside produce in Defendants' packing shed during the 2013, 2014 and 2015 seasons.

97.         The Plaintiffs as well as others similarly situated, regularly worked in the Defendants' packing shed for more than forty hours in a workweek.

14

98.        The Plaintiffs as well as others similarly situated, never received one and a half times their regular rate of pay for the hours above forty worked during a workweek in Defendants' packing shed.

99.        Defendants were on notice of their FLSA obligations due in part to prior litigation and due to notices and correspondence they had received.

100.       Defendant Hamilton Growers was on notice of its duty to investigate its compliance with the Fair Labor Standards Act due to prior suits in 1998, 2003, and 2012.

101.       Defendants knew of or showed reckless disregard for their FLSA obligations by failing to fully reimburse Plaintiffs and other similarly situated workers for expenses incurred for Defendants' benefit and by failing to pay overtime for hours worked in excess of forty while packing outside produce.

CLASS ALLEGATIONS

102.       The claims set forth in Counts III and IV are brought by the Plaintiffs, specified in those counts, on behalf of themselves and all other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

103.       The Plaintiffs seek to represent in Count III a class consisting of all H-2A temporary foreign workers who were employed pursuant to the job orders filed by Defendants for the 2013 thorough 2015 calendar years with a subclass of those employed in the packing shed.

104.       The Plaintiffs seek to represent in Count IV a class consisting of all non-H2A workers who were employed in the packing shed in positions covered by the terms of an H-2A job order with a sub-class of those who were charged for housing by Defendants or Defendants' supervisory employees or agents.

105.     The class members are so numerous and so geographically dispersed as to make joinder impracticable. The precise number of individuals in the class is known only to the Defendants.  However the class for Count III is believed to consist of at least 200 individuals. The class in Count IV is believed to consist of in excess of 30 individuals.  Both classes are comprised primarily of indigent foreign workers from Mexico.  The great majority of class members are not fluent in English and are unfamiliar with the American judicial system.  The small size of the individual claims and the indigence of the class members makes the maintenance of separate actions by class members economically infeasible.

106.     There are questions of law and fact common to the class including whether Defendants failed to reimburse workers for their expenses in coming to work for Defendants; whether Defendants failed to comply with federal wage laws as contractually promised; whether Defendants failed to provide wage statements with contractually promised wage rates; whether Defendants provided wage statements that failed to contain information on hours and deductions as required by H-2A regulations; and whether Defendants charged non-H2A workers for residing in housing facilities operated by Defendants.

107.     The claims of the Plaintiffs are typical of the class members and predominate over claims affecting only individual class members.

108.     The Plaintiffs have the same interests as the class members and will fairly and adequately represent the interests of the class.

## COUNT I

## FAIR LABOR STANDARDS ACT – MINIMUM WAGE

109.     Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 101 above by reference.

110.      This Count sets forth a claim by Plaintiffs Hernandez-Torres and Rios-Ramirez and others similarly situated for damages for Defendants' violations of the minimum wage provisions of the FLSA pursuant to 29 U.S.C. § 216 (b).

111.    Plaintiffs Hernandez-Torres and Rios-Ramirez and others similarly situated assert this claim for the 2013, 2014 and 2015 season.

112.      As detailed above, Defendants failed to pay Plaintiffs, and others similarly situated, at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, as required by 29 U.S.C. § 206(a).

113.      The violations of the FLSA resulted, in part, from Defendants' failure to reimburse expenses as detailed in paragraphs  through 100 above, which Plaintiffs and others similarly situated incurred primarily for the benefit or convenience of Defendants prior to their first week of work. When these expenses were subtracted from the Plaintiffs' and others similarly-situated employees' first week's pay, as required by law, Plaintiffs' and other similarly-situated employees' earnings were near or below zero, and fell well below the required average minimum hourly wage for that pay period.

114.      The violations set forth in this Count resulted, in part, from Defendants' practice of paying Plaintiffs and others similarly situated based on the quantity of the produce harvested or packed.

115.      Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA set forth in this Count, Plaintiffs and others similarly situated are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they were suffered or permitted to work at Defendants' operations and during which they earned less than the applicable minimum wage.

116.       Defendants' violations set out in this Count were willful within the meaning of FLSA.

## COUNT II

**FAIR LABOR STANDARDS ACT – MAXIMUM HOURS**

117.       Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 101 above by reference.

118.       This Count sets forth a claim by Plaintiffs and others similarly situated for declaratory relief and damages for Defendants' violations of the maximum hours provision of the FLSA, pursuant to 29 U.S.C. § 216(b).

119.       Plaintiffs Hernandez-Torres, Luna, and Ramirez-Rios and others similarly situated employed in the packing of produce assert this claim for the 2013, 2014 and 2015 seasons.

120.       The Plaintiffs and others similarly situated employed in Defendants' produce packing operations worked long hours for Defendants without receiving the protections of the maximum hours provision of the FLSA, 29 U.S.C. § 207.

121.       Defendants employed the Plaintiffs and other similarly situated in its packing operations to process and pack outside produce in workweeks when Plaintiffs and others similarly situated were suffered or permitted to work more than 40 hours, without provision of one and a half times their regular rate of pay for those hours worked in excess of 40 in a workweek.

122.       Defendants violated Plaintiffs and others similarly situated rights by employing them for workweeks longer than forty (40) hours without compensating such employees for their

employment in excess of such hours at a rate not less than one and a half times the regular rate (150% of regular rate) at which they were employed, as required by 29 U.S.C. § 207.

123.        As a result of Defendants' violations of the FLSA, each of the Plaintiffs, and others similarly situated, are entitled to recover the amount of their unpaid overtime wages and an equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b).

124.        Defendants had been investigated by the United States Department of Labor for violations of the overtime provisions of the Fair Labor Standards Act and were aware of the requirement to pay overtime to packing shed workers who packed or re-packed outside produce.

125.        Defendants' violations as set forth in this Count were willful within the meaning of the FLSA.

## COUNT III

### BREACH OF CONTRACT

126.        Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 101 above by reference.

127.        This Count sets forth Plaintiffs' claims for declaratory relief and damages for Defendants' breach of the rate of pay provisions, transportation provisions, and assurances provision contained in Plaintiffs' employment contracts, including the terms set forth in paragraphs - above, which created a contractual promise to pay Plaintiffs and others similarly situated the highest of the applicable Fair Labor Standards Act wage or Adverse Effect Wage Rate for each compensable hour of work in a workweek and which promised transportation and subsistence from the place from which the worker came.

19

128.      This claims is brought by Plaintiffs on behalf of themselves and others similarly situated pursuant to Fed. R. Civ. P. 23(b)(3).

129.      Plaintiffs assert this claim for the 2013, 2014 and 2015 seasons.

130.      Defendants, through their agents, offered employment on the terms and conditions set out in the 2013, 2014, and 2015 job orders as described in paragraphs 61-78 above.

131.      The Plaintiffs accepted Defendants' offer.

132.      Defendants breached their H-2A employment contracts with the Plaintiffs by failing to pay them at least the applicable Fair Labor Standards Act wage and Adverse Effect Wage Rate for each compensable hour of work in a workweek, as set forth in paragraphs 65-67 above.

133.      Defendants also breached their H-2A employment contracts with the Plaintiffs and others similarly situated by failing to reimburse them, at the 50 percent point of their employment contracts, for all inbound transportation and subsistence expenses not previously reimbursed.

134.      As a direct consequence of Defendants' breaches as set forth in this Count, the Plaintiffs and others similarly situated have suffered damages.

135.      Defendants are liable to the Plaintiffs and a class of similarly situated individuals for the damages that arose naturally and according to the usual course of things from Defendants' breaches as set forth in this Count, pursuant to federal common law and/or O.C.G.A. § 13-6-2, including unpaid wages and reimbursement amounts, damages arising from the delay, and prejudgment interest.

COUNT IV

Agricultural Worker Protection Act

136.        This count sets for a claim under the Agricultural Worker Protection Act for breach of the parties working arrangement.

137.        Plaintiff Luna brings this claim for the 2013, 2014 and 2015 seasons on behalf of himself and others pursuant to Fed. R. Civ. P. 23(b)(3).

138.        Plaintiff Luna is a migrant agricultural worker who resided in Defendants' labor camp.

139.        Plaintiff Luna was employed in equipment operation and packing shed duties alongside H-2A workers.

140.        Plaintiff Luna asserts claims for violations of the wage payment requirements of the AWPA, 29 U.S.C. § 1822(a) for failing to pay Plaintiff Luna and others similarly situated all wages owed when due.

141.        Plaintiff Luna also asserts violations of the record keeping requirements of the AWPA, 29 U.S.C. § 1821(d) by providing incomplete and incorrect wage statements that failed to record all hours worked and failed to record all deductions taken from wages and the reasons for those deductions.

142.         Defendants violated the AWPA by failing to pay Plaintiff Luna and others similarly situated their wages as required by the H-2A contract and/or the Fair Labor Standards Act, including overtime wages for packing and loading or unloading work which was non-exempt from federal overtime rules.

143.         Defendants also violated the AWPA by collecting or allowing to be collected, through their agents, housing charges that unlawfully reduced the wages of Plaintiff Luna and others similarly situated.

144.         Defendants are liable to Plaintiff Luna and a class of similarly situated non-H2A workers for the unpaid wages

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

(a)     Certify this case as a class action in accordance with Fed. R. Civ. P. 23(b)(3) with respect to Counts III and IV;

(b)     Under Count I:

    1.     Declare that Defendants have willfully violated the FLSA as specified in in Count I above;

    2.     Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and Opt-In Plaintiff and others similarly situated in the amount of his or her respective unpaid wages, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b); and

    3.     Award Plaintiffs their attorneys' fees pursuant to 29 U.S.C. § 216(b).

(c)     Under Count II:

    1.     Declare that Defendants have willfully violated the FLSA as specified in Count II;

    2.     Grant judgment against Defendants jointly and severally, and in favor of each Plaintiff and Opt-in Plaintiff and others similarly situated in the amount of his or

her respective unpaid wages, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b); and

3.    Award Plaintiffs their attorneys' fees pursuant to 29 U.S.C. § 216(b).

(d)    Under Count III:

1.    Declare that Defendants have breached their employment contracts with Plaintiffs and others similarly situated as specified in Count III;

2.    Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and the members of the class, in the amount of their damages that arose naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of such breach;

(e)    Under Count IV:

1.    Declare that Defendants have violated the Migrant & Seasonal Agricultural Worker Protection Act as described above;

2.    Grant judgment against Defendants, jointly and severally, and in favor of Plaintiff Luna and the members of the class, in the amount of their actual or statutory damages for Defendants breach of the wage payment and record keeping requirements of the AWPA;

(f)    Award Plaintiffs and Opt-In Plaintiffs pre and postjudgment interest as allowed by law;

(g)    Cast all costs upon Defendants; and

(h)    Award Plaintiffs and Opt-In Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

Respectfully submitted this _17th__ day of June, 2016,

__s/ Dawson Morton
Dawson Morton
Georgia Bar No. 525985
Dawson Morton, LLC
104 Cambridge Ave
Decatur, GA  30030
Phone:  (404) 590-1295
dawson@dawsonmorton.com


*Attorneys for Plaintiffs*